**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:16cv25211**

DORIS INMENSO, as Personal
Representative of the Estate of
Luis Inmenso, deceased,

      Plaintiff,

vs.

UNITED STATES OF AMERICA,

      Defendant.
_____/

### COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT

COMES NOW, the Plaintiff, DORIS INMENSO, as Personal Representative of the Estate of Luis Inmenso, deceased, by and through undersigned counsel, and sues the Defendant, UNITED STATES OF AMERICA, and alleges:

### JURISDICTIONAL ALLEGATIONS AND IDENTIFICATION OF PARTIES

1. This is an action for damages arising out of wrongful death caused by the negligent or wrongful acts or omissions of an employee and/or agent of the United States government while acting within the course and scope of his/her employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff under the laws of the State of Florida, where the act or omission occurred [28 U.S.C. § 1346 (b)].

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1346 (b) and 28 U.S.C. § § 2671 - 2680, also known as the Federal Tort Claims Act.

3. Plaintiff, DORIS INMENSO, has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act. A copy of the Standard Form 95 and the Return Receipt cards are attached hereto as Exhibit "A."

4.      Six months have elapsed since the filing of the Standard Form 95 referred to above and there has been no response by the Defendant.   Therefore, the Claimant may treat administrative inaction for six months as a denial [28 U.S.C. § 2401 (b)].

5.      The Plaintiff, DORIS INMENSO, the surviving wife of Luis Inmenso, is or shall be the duly appointed Personal Representative of the Estate of Luis Inmenso, deceased.

6.      At all times material, the Plaintiff, DORIS INMENSO, was and is a resident of Miami-Dade County and is otherwise sui juris.

7.      At all times material, Kyana Inmenso, a minor whose birthday is June 26, 2000, was and is the surviving daughter of Luis Inmenso.

8.      At all times material, Miami Beach Community Health Center was and is a Federally Qualified Health Center operating under Section 330 of the Public Health Service Act. Pursuant to Section 224(h) of the Public Health Service Act, 42 U.S.C. 233(h) as amended by the Federally Supported Health Centers Assistance Act of 1995 (Pub. L. 104-73), Miami Beach Community Health Center as well as its employees, agents and/or contractors, including, but not limited to Ramon Eduardo Martinez, M.D., have been deemed employees of the Federal Government.

9.      At all times material, Defendant, UNITED STATES OF AMERICA, operated and/or otherwise controlled the healthcare facility known as Miami Beach Community Health Center.

10.     At all times material, Ramon Eduardo Martinez, M.D., was and is an employee and/or agent of Defendant, UNITED STATES OF AMERICA, and worked at the healthcare facility known as Miami Beach Community Health Center.

11.     At all times material, Miami Beach Community Health Center, by and through its medical, nursing, and ancillary staff including, but not limited to Ramon Eduardo Martinez, M.D., provided medical care and treatment to Luis Inmenso, deceased, in Miami-Dade County, Florida, out of which treatment this lawsuit arises.

## FACTS GIVING RISE TO CLAIM

12.     Luis Inmenso was a sixty-one-year-old male, date of birth September 15, 1953, with a past medical history of large intestine neoplasm, hyperlipidemia, hypertension and obesity.

13.     Ramon Eduardo Martinez, M.D. provided primary care services to Luis Inmenso at the Miami Beach Community Health Center.  Mr. Inmenso's initial office visit occurred on September 24, 2012.  At that time, Mr. Inmenso requested a referral for a colonoscopy due to a history of colon cancer 12 years prior.  Mr. Inmenso had follow-up colonoscopies, the last in 2009, and all were reported as negative.

14.     On September 24, 2012, Luis Inmenso also reported coughing up sputum which was purulent. Follow up laboratory testing was recommended. A referral for a colonoscopy was provided. Ramon Eduardo Martinez, M.D. did not order a chest x-ray.

15.     On December 18, 2012, Luis Inmenso returned to Ramon Eduardo Martinez, M.D. to discuss the lab results.  At that time, Mr. Inmenso's weight was 202 pounds and Dr. Martinez recommended a weight loss diet.

16.     On March 13, 2013, Luis Inmenso returned to Ramon Eduardo Martinez, M.D. to follow up on his blood pressure which was noted to be 146/86.  Mr. Inmenso's weight at that time was 190 pounds and a weight loss diet was again recommended.

17.     On March 27, 2013, a colonoscopy was performed at Jackson Memorial Hospital by Jeffrey Raskin, M.D. which was relatively normal and showed colonic anastomosis visualized at 15cm from the anal verge, diverticula around the anastomosis, rectal fissure with site oozing and large internal and external hemorrhoids.  A repeat colonoscopy was recommended in 5 years.

18.     On April 17, 2013, Luis Inmenso returned to Ramon Eduardo Martinez, M.D. at the Miami Beach Community Health Center complaining of constant throat discomfort including coughing, some phlegm and neck pain.  Mr. Inmenso also complained of muscle tenderness in the left paraspinal musculature of his neck and upper back. Dr. Martinez noted that Mr. Inmenso's weight was 187 pounds and he was instructed to lose weight.  Breath sounds were not evaluated. Dr. Martinez diagnosed muscle spasm of the neck and also noted that the thyroid function tests revealed nonspecific abnormal findings. Dr. Martinez prescribed Flexeril and warm compresses.

19.     On July 17, 2013, Luis Inmenso returned to Ramon Eduardo Martinez, M.D. complaining again of a cough, continued throat discomfort, phlegm and constant throat clearing.

Breath sounds were not auscultated by Dr. Martinez.   The assessment included dry cough, hypertension, subclinical hypothyroidism and male erectile disorder.  Mr. Inmenso's weight was noted to be 187lbs.  Dr. Martinez' plan for the cough was to discontinue/hold Captopril.

20.     On September 11, 2013, Luis Inmenso presented again to Ramon Eduardo Martinez, M.D. complaining of persistent cough.   Although Mr. Inmenso reported some improvement in the cough with the change in the blood pressure medication, the cough remained and he still had phlegm in the morning.  The physical examination was noted to be within normal limits but breath sounds were not documented and there was no treatment plan for the cough.

21.     On November 19, 2013, a CBC was drawn and was within normal limits with the exception of a slightly decreased hemoglobin level of 12.5 (normal = 12.6-17.7) and liver function tests were within normal limits.

22.     On January 28, 2014, repeat lab studies were performed which showed a low hemoglobin level of 11.1 (normal = 12.6-17.7) and a low hematocrit level of 34.9 (normal = 37.5-51). The albumin level was also low at 3.3 (normal = 3.6-4.8).

23.     At the office visit of January 31, 2014, Ramon Eduardo Martinez, M.D. noted that Luis Inmenso "continues with a dry cough that is now chronic".  The examination was noted to be within normal limits without documentation of breath sounds or oral examination.  Dr. Martinez' assessments included dry cough, hypogonadism, anemia, and carcinoma of large intestine. Mr. Inmenso's weight was 180 pounds and he was again instructed to lose weight.  Dr. Martinez did not recognize that Mr. Inmenso had lost 20 pounds over the past year and Dr.

Martinez did not note if Mr. Inmenso had been following the diet plan or if the weight loss was due to the possibility of an underlying illness. The treatment plan included CEA and chest x-ray.

24.     On March 4, 2014, lab studies were performed at LabCorp and revealed an elevated WBC of 10.9 (normal = 4.0-10.5), a lower hemoglobin level of 10.6 (normal = 12.6-17.7) and a low hematocrit level of 34.7 (normal = 37.5-51) and the CEA was elevated to 44.3 (normal = 0.0-4.7).

25.     On March 5, 2014, the chest x-ray was performed which evidenced chronic changes in both lungs, abnormal density within the posterior left lower lung blunting the left posterior costophrenic angle which needed follow up with a CT of the chest for better characterization and to rule out any underlying mass.

26.     On March 7, 2014, Luis Inmenso returned to Ramon Eduardo Martinez, M.D. at Miami Beach Community Health Center to review the lab and x-ray results.  Dr. Martinez noted that Mr. Inmenso continued with the chronic cough as well as some discomfort in his left shoulder area and back pain.  Dr. Martinez also noted that his CEA was elevated to 44.3 from a previous normal level of 3.2 and the chest x-ray showed a left blurred costophrenic angle.  A CT of the chest, abdomen, and pelvis was ordered. Mr. Inmenso was instructed to return in six weeks.

27.     On March 19, 2014, Luis Inmenso presented to the emergency department of Jackson North Medical Center complaining of cough, shortness of breath, and chest pain.  A CT scan of the chest revealed bilateral pulmonary embolus and a left lung mass.  A CT scan of the

abdomen and pelvis showed some lytic lesions in the right side of the sacrum and iliac bones and a soft tissue mass in the right iliac fossa.

28.     On March 20, 2014, a CT guided biopsy of the right pelvic mass was performed which showed moderately differentiated adenocarcinoma with severe acute inflammation.

29.     Luis Inmenso underwent chemotherapy and radiation therapy at Jackson Memorial Hospital and ultimately expired on November 16, 2014.

30.     As a direct and proximate result of the negligence of Defendant, UNITED STATES OF AMERICA, by and through its employees, agents or servants, including, but not limited to Miami Beach Community Health Center and Ramon Eduardo Martinez, M.D., as alleged hereinabove, Luis Inmenso died.

## COUNT I
## NEGLIGENCE CLAIM AGAINST UNITED STATES OF AMERICA

Plaintiff adopts and re-alleges paragraphs 1 through 30 and further alleges:

31.     The Defendant, UNITED STATES OF AMERICA, by and through its employees, agents or servants, including, but not limited to Miami Beach Community Health Center and Ramon Eduardo Martinez, M.D., did owe Luis Inmenso, deceased, a duty to undertake and to render hospital, medical and nursing services in accordance with the prevailing professional standards of care, skill and treatment which is recognized by reasonably prudent nurses, physicians and hospitals under same or similar conditions in Miami-Dade County, Florida, or any other similar medical community.

32.     Notwithstanding said duty, the Defendant, UNITED STATES OF AMERICA, by and through its employees, agents or servants, including, but not limited to Miami Beach

Community Health Center and Ramon Eduardo Martinez, M.D., acting within the course and scope of their employment and/or agency therewith, breached said duty by doing or failing to do one or more following acts, any, some, or all of which are a departure from the prevailing professional standards of care in Miami-Dade County, Florida, or any other similar medical community, to wit:

      a.  Failed to coordinate all clinical data to arrive at a correct diagnosis and treatment plan.

      b.  Failed to order necessary and appropriate testing.

      c.  Failed to perform a detailed and thorough physical assessment.

      d.  Failed to order a chest x-ray from September 24, 2012 through January 31, 2014.

      e.  Failed to timely order a chest x-ray in light of the patient's continued complaints.

      f.  Failed to timely order a CT of the chest in light of the patient's continued complaints.

      g.  Failed to refer the patient to a specialist in light of the patient's continued complaints.

33.    As a direct and proximate result of the negligence of Defendant, UNITED STATES OF AMERICA, by and through its employees, agents or servants, including, but not limited to Miami Beach Community Health Center and Ramon Eduardo Martinez, M.D., as alleged hereinabove, the patient, Luis Inmenso, died.

34.    As a direct and proximate result of the negligence of the Defendant, UNITED STATES OF AMERICA, by and through its employees, agents or servants, including, but not limited to Miami Beach Community Health Center and Ramon Eduardo Martinez, M.D.,

resulting in the death of Luis Inmenso, the Plaintiff, DORIS INMENSO, as Personal

Representative of the Estate of Luis Inmenso, makes the following claim for damages:

A. Claim for Damages of Personal Representative on behalf of the Estate of Luis Inmenso, deceased:

　　1) Loss of net accumulations;

　　2) Loss of earnings;

　　3) Funeral expenses due the decedent's death that have become a charge against the state and/or were paid by or on behalf of the decedent; and

　　4) Medical expenses due to the decedent's injury and death.

B. Claim for Damages of Personal Representative on behalf of DORIS INMENSO, surviving wife of Luis Inmenso, deceased:

　　1) Loss of support and services;

　　2) Medical and funeral expenses due to the decedent's death;

　　3) Loss of the decedent's companionship and protection; and

　　4) Mental pain and suffering as a result of the injury and death of the decedent.

C. Claim for Damages on behalf of Kyana Inmenso, surviving minor daughter of Luis Inmenso, deceased:

　　1) Loss of support and services;

　　2) Loss of the decedent's companionship and protection; and

　　3) Mental pain and suffering as a result of the injury and death of the decedent.

WHEREFORE, the Plaintiff, DORIS INMENSO, as Personal Representative of the

Estate of Luis Inmenso, deceased, demands judgment against Defendant, UNITED STATES OF

AMERICA, for damages in the amount of Ten Million Dollars ($10,000,000.00) exclusive of interest and costs.

DATED this _____ day of December, 2016.

> **MALOVE HENRATTY, P.A.**
> *Counsel for Plaintiff*
> 14 Rose Drive
> Fort Lauderdale, FL 33316
> Telephone: (954) 767-1000
> Facsimile: (954) 767-1001
> servemalovehenratty@malovelawfirm.com
> Lspellacy@malovelawfirm.com
>
> By:_____ 115440 For'.
> STEPHEN L. MALOVE
> Fla. Bar No. 305553

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. U.S. Department of Health and Human Services<br>Office of the General Counsel<br>General Law Division<br>Claims and Employment Law Branch<br>330 C Street, SW<br>Attention: Claims<br>Switzer Building, Suite 2600<br>Washington, DC 20201 | 2. Doris Inmenso who is or shall be the duly appointed Personal Representative of the Estate of Luis Inmenso, deceased; on behalf of the Estate of Luis Inmenso, deceased; on behalf of Doris Inmenso, surviving wife; and on behalf of Kyana Inmenso, surviving minor daughter.<br>c/o Stephen L. Malove, Esq. Malove Henratty, P.A., 14 Rose Dr., Fort Lauderdale, FL 33316. |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>DECEDENT<br>09/15/1953 | 5. MARITAL STATUS<br>MARRIED | 6. DATE AND DAY OF ACCIDENT<br>SEE # 8 BELOW | 7. TIME (A.M. OR P.M.)<br>UNKNOWN |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

See attached narrative with known facts and circumstances. Medical records, x-ray on disc and medical bills in claimant's present possession are attached. Claimant is not in possession of any subrogation letters at this time.

Also attached is the affidavit of expert C. David Bakken, M.D.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

None.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

This is a medical malpractice/wrongful death claim as set forth in the attached narrative. See #8 above.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Doris Inmenso | 1041 NE 175th Street, North Miami Beach, FL 33162 | |
| Kyana Inmenso | 1041 NE 175th Street, North Miami Beach, FL 33162 | |
| Olenka Inmenso | 1041 NE 175th Street, North Miami Beach, FL 33162 | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>NONE | 12b. PERSONAL INJURY — THIS IS PART OF THE MEDICAL MAL-PRACTICE WRONGFUL DEATH CLAIM | 12c. WRONGFUL DEATH<br>$10,000,000 | 12d. TOTAL (Failure to specify may cause forfeiture of your rights).<br>$10,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side)<br>*Stephen L. Malove, Esq.*<br>LEGAL REPRESENTATIVE OF CLAIMANTS. | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>(954)767-1000 | 14. DATE OF SIGNATURE<br>05/23/2016 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109


PLAINTIFF'S EXHIBIT
A

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?   ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

N/A

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☐ No   | 17. If deductible, state amount.

N/A

*N/A*

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

N/A

19. Do you carry public liability and property damage insurance?   ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

N/A

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.  Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)*  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)*  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)*  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)*  **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK



STEPHEN L. MALOVE
• ALSO ADMITTED IN PA

14 ROSE DRIVE
FORT LAUDERDALE, FL 33316
TELEPHONE: (954) 767-1000
FAX: (954) 767-1001
www.malovelawfirm.com

SCOTT L. HENRATTY
RANDALL A. DIEZ, JR.

2.   Claimants are represented by the law firm of Malove Henratty, P.A., 14 Rose Drive, Fort Lauderdale, FL 33316. Telephone: (954)767-1000; Facsimile: (954)767-1001, e-mail: smalove@malovelawfirm.com

3.   Claimants are civilians and not members of the military.

4.   Date of Birth of decedent: 09/15/1953

     Date of Birth of Doris Inmenso: 06/26/1959

     Date of Birth of Kyana Inmenso: 01/23/2000

5.   Decedent was married to claimant Doris Inmenso at the time of his death.

8.   Doris Inmenso, who is or shall be the duly appointed Personal Representative of the Estate of Luis Inmenso, deceased; and on behalf of Luis Inmenso, deceased; on behalf of Doris Inmenso, surviving wife (DOB: 06/26/59) of Luis Inmenso, deceased; and on behalf of Kyana Inmenso, surviving minor daughter (DOB: 1/23/00) of Luis Inmenso, deceased brings this claim for medical negligence against Miami Beach Community Health Center, Inc. d/b/a Miami Beach Community and Ramon E. Martinez, M.D. and those in privity therewith, and/or with whom they had a legal relationship regarding the practice of medicine and/ or provided health care to Luis Inmenso, deceased.

     The care and treatment of Luis Inmenso, deceased, by Miami Beach Community Health Center, Inc. d/b/a Miami Beach Community Health Center, 11645 Biscayne Boulevard, North Miami, FL 33181 and Ramon Eduardo Martinez, M.D., 11645 Biscayne Blvd, Miami, FL 33181, and those in privity therewith, represents a breach of the prevailing professional standard of care and/or the acceptable and appropriate standard of care.

     Further, it is contended that the above-named healthcare providers

departed from the prevailing professional standard of care and/or the acceptable and appropriate standard of care in the care and treatment of Luis Inmenso, deceased, as follows:

I.    FACTS

a.    Mr. Luis Inmenso was a sixty-one-year-old male, date of birth September 15, 1953, with a past medical history of large intestine neoplasm, hyperlipidemia, hypertension and obesity.

b.    Ramon Martinez, M.D. provided primary care services to Mr. Inmenso at the Miami Beach Community Health Center.  Mr. Inmenso's initial office visit occurred on September 24, 2012. At that time, Mr. Inmenso requested a referral for a colonoscopy due to a history of colon cancer 12 years prior. He had follow-up colonoscopies, the last in 2009, and all were reported as negative.

c.    On September 24, 2012 Mr. Inmenso also reported coughing up sputum which was purulent. Follow up laboratory testing was recommended. A referral for a colonoscopy was provided. Dr. Martinez did not order a chest x-ray.

d.    Mr. Inmenso returned to Dr. Martinez on December 18, 2012 to discuss the lab results.  At that time his weight was 202 pounds and Dr. Martinez again recommended a weight loss diet.

e.    On March 13, 2013 Mr. Inmenso returned to Dr. Martinez to follow up on his blood pressure which was noted to be 146/86.  His weight at that time was 190 pounds and a weight loss diet was again recommended.

f.    A colonoscopy was performed on March 27, 2013 at Jackson Memorial Hospital by Jeffrey Raskin, M.D. which was relatively normal and showed colonic anastomosis visualized at 15cm from the anal verge, diverticula around the anastomosis, rectal fissure with site oozing and large internal and external hemorrhoids.  A repeat colonoscopy was recommended in 5 years.

2

g.  On April 17, 2013 Mr. Inmenso returned to Dr. Martinez at the Miami Beach Community Health Center complaining of constant throat discomfort-like coughing, some phlegm and neck pain.  He also complained of muscle tenderness in the left paraspinal musculature of his neck and upper back. Dr. Martinez noted that his weight was 187 pounds and he was instructed to lose weight.  Breath sounds were not evaluated. Dr. Martinez diagnosed muscle spasm of the neck and also noted that the thyroid function tests revealed nonspecific abnormal findings. He prescribed Flexeril and warm compresses.

h.  On July 17, 2013 Mr. Inmenso again returned to Dr. Martinez complaining of a cough, continued throat discomfort, phlegm and constant throat clearing. Breath sounds were not auscultated by Dr. Martinez.  The assessment included dry cough, hypertension, subclinical hypothyroidism and male erectile disorder.  His weight was noted to be 187lbs.  Dr. Martinez' plan for the cough was to discontinue/hold Captopril.

i.  Mr. Inmenso again presented to Dr. Martinez on September 11, 2013 complaining of persistent cough.  Although he reported some improvement in the cough with the change in the blood pressure medication, the cough remained and he still had phlegm in the morning.  The physical examination was noted to be within normal limits but breath sounds were not documented and there was no treatment plan for the cough.

j.  A CBC was drawn on November 19, 2013 and was within normal limits with the exception of a slightly decreased hemoglobin level of 12.5 (normal = 12.6-17.7) and liver function tests were within normal limits.

k.  Repeat lab studies were performed on January 28, 2014 and showed a low hemoglobin level of 11.1 (normal = 12.6-17.7) and a low hematocrit level of 34.9 (normal = 37.5-51). The albumin level was also low at 3.3 (normal = 3.6-4.8).

l.  At the office visit of January 31, 2014 Dr. Martinez noted that Mr. Inmenso "continues with a dry cough that is now chronic".  The examination was noted to be within normal

3

limits without documentation of breath sounds or oral examination. Dr. Martinez' assessments included dry cough, hypogonadism, anemia, and carcinoma of large intestine. His weight was 180 pounds and again he was instructed to lose weight. Dr. Martinez did not recognize that Mr. Inmenso had lost 20 pounds over the past year or note if Mr. Inmenso had been following the diet plan or if the weight loss was due to the possibility of an underlying carcinoma. The treatment plan included CEA and chest x-ray.

m.   The lab studies were performed on March 4, 2014 at LabCorp and revealed an elevated WBC of 10.9 (normal = 4.0-10.5), a lower hemoglobin level of 10.6 (normal = 12.6-17.7) and a low hematocrit level of 34.7 (normal = 37.5-51) and the CEA was elevated to 44.3 (normal = 0.0-4.7).

n.   The chest x-ray was performed on March 5, 2014 and noted chronic changes in both lungs, abnormal density within the posterior left lower lung blunting the left posterior costophrenic angle which needed follow up with a CT of the chest for better characterization and to rule out any underlying mass.

o.   Mr. Inmenso returned to Dr. Martinez at Miami Beach Community Health Center on March 7, 2014 to review the lab and x-ray results. Dr. Martinez noted that Mr. Inmenso continued with the chronic cough as well as some discomfort in his left shoulder area and back pain. Dr. Martinez also noted that his CEA was elevated to 44.3 from a previous normal level of 3.2 and the chest x-ray showed a left blurred costophrenic angle. A CT of the chest, abdomen, and pelvis was ordered. Mr. Inmenso was instructed to return in six weeks.

p.   On March 19, 2014 Mr. Inmenso presented to the emergency department of Jackson North Medical Center complaining of cough, shortness of breath, and chest pain. A CT scan of the chest revealed bilateral pulmonary embolus and a left lung mass. A CT scan of the abdomen and pelvis showed some lytic lesions in the right side of the sacrum and iliac bones and a soft tissue mass in the right iliac fossa.

q.   A CT guided biopsy of the right pelvic mass was performed

4

on March 20, 2014 and showed moderately differentiated adenocarcinoma with severe acute inflammation.

r.    Mr. Inmenso underwent chemotherapy and radiation therapy at Jackson Memorial Hospital and expired on November 16, 2014.

## II.    NEGLIGENCE

Ramon E. Martinez, M.D., and Miami Beach Community Health Center by and through its medical, nursing and ancillary staff deviated from the acceptable standard of care and/or departed from the prevailing professional standard of care, as follows:

a.    Failed to coordinate all clinical data to arrive at a correct diagnosis and treatment plan.

b.    Failed to order necessary and appropriate testing.

c.    Failed to perform a detailed and thorough physical assessment.

d.    Failed to order a chest x-ray from September 24, 2012 through January 31, 2014.

e.    Failed to timely order a chest x-ray in light of the patient's continued complaints.

f.    Failed to timely order a CT of the chest in light of the patient's continued complaints.

g.    Failed to refer the patient to a specialist in light of the patient's continued complaints.

## III.    CAUSATION

The departures set forth above were a cause of the death of Luis Inmenso. The claimants did not retain counsel until October 19, 2015. Thereafter, the claimants did not know the existence and the cause of death until May 14, 2016 when an expert provided an affidavit setting forth both the existence and cause of death.

Within a reasonable degree of medical probability, the outcome, more

likely than not, would have been different with proper care and/or treatment.

See Affidavit of C. David Bakken, M.D.

IV.    DAMAGES

The Personal Representative of the Estate of Luis Inmenso, deceased; on behalf of the Estate; on behalf of Doris Inmenso, surviving wife; and on behalf of Kyana Inmenso, surviving minor daughter, brings this action for all compensable elements of damages pursuant to federal and/or Florida law. See Florida Statute §768.21 which sets forth those damages.

The Estate makes a claim for loss of earnings, loss of prospective net accumulations, funeral expenses and medical bills. The amount for said economic damages have not yet been calculated.

The surviving spouse makes a claim for economic damages for medical and funeral expenses paid by the survivor, and value of lost support and services past and future. The amount of said economic damages has not yet been calculated. The surviving spouse also makes a claim for loss of the decedent's companionship and protection and for mental pain and suffering.

The surviving minor daughter makes a claim for economic damages for value of lost support and services past and future. The amount of said economic damages has not yet been calculated. The surviving minor daughter also makes a claim for lost parental companionship, instruction and guidance and for mental pain and suffering.

12b.  This is part of the medical malpractice/wrongful death.

13a.  See Authority to Represent naming Malove Henratty, P.A. as claimant's legal representative.

6

<u>AFFIDAVIT OF C. DAVID BAKKEN, M.D</u>

STATE OF ILLINOIS      )
                       ) SS:
COUNTY OF COOK         )

BEFORE ME, the undersigned authority, personally appeared, C. DAVID BAKKEN, M.D., who first being duly sworn, deposes and says.

1.      I am over the age of 21 years, competent to make this Affidavit, and with personal knowledge of the facts and opinions contained herein.

2.      I am a physician licensed to practice medicine in the State of Illinois. I practice the speciality of internal medicine and infectious disease and am Board Certified in both specialities.

3.      During the past three years and during the three years prior to the occurrence giving rise to this matter, my medical practice has included the evaluation, diagnosis and treatment of the medical condition that is the subject of this claim and I have prior experience treating patients similar to Luis Inmenso, deceased.  A copy of my curriculum vitae is attached hereto.

4.      By reason of my active clinical practice, I have knowledge of the applicable and prevailing professional standards of care for physicians including internal medicine physicians providing primary care and treating patients such as Luis Inmenso.   I also have knowledge of the applicable and prevailing professional standards of care for physician offices, clinics, hospitals, hospitalists, and clinic medical and nursing staff regarding the care and treatment of patients such as Luis Inmenso.

5.      I have personally reviewed the following medical records pertaining

to Luis Inmenso, deceased:

    a.    Miami Beach Community Health Center/Ramon E. Martinez, M.D.;

    b.    Miami Diagnostic & Interventional Center for dates of service: March 5, 2014, and

    b.    Jackson North Medical Center for dates of service: March 19, 2014 through March 26, 2014.

6.    It is my medical opinion, based upon the aforestated documents, as well as my education, training, and experience, that Ramon E. Martinez, M.D. and the medical and nursing staff of Miami Beach Community Health Center deviated from the acceptable and appropriate standards of care and/or prevailing professional standards of care in their care and treatment of Luis Inmenso, deceased, in the following respects:

    a.    Mr. Luis Inmenso was a sixty-one-year-old male, date of birth September 15, 1953, with a past medical history of large intestine neoplasm, hyperlipidemia, hypertension and obesity.

    b.    Ramon Martinez, M.D. provided primary care services to Mr. Inmenso at the Miami Beach Community Health Center. Mr. Inmenso's initial office visit occurred on September 24, 2012. At that time, Mr. Inmenso requested a referral for a

2

colonoscopy due to a history of colon cancer 12 years prior. He had follow-up colonoscopies, the last in 2009, and all were reported as negative.

c.   On September 24, 2012 Mr. Inmenso also reported coughing up sputum which was purulent. Follow up laboratory testing was recommended. A referral for a colonoscopy was provided. Dr. Martinez did not order a chest x-ray.

d.   Mr. Inmenso returned to Dr. Martinez on December 18, 2012 to discuss the lab results. At that time his weight was 202 pounds and Dr. Martinez again recommended a weight loss diet.

e.   On March 13, 2013 Mr. Inmenso returned to Dr. Martinez to follow up on his blood pressure which was noted to be 146/86. His weight at that time was 190 pounds and a weight loss diet was again recommended.

f.   A colonoscopy was performed on March 27, 2013 at Jackson Memorial Hospital by Jeffrey Raskin, M.D. which was relatively normal and showed colonic anastomosis visualized at 15cm from the anal verge, diverticula around the anastomosis, rectal fissure with site oozing and large internal and external hemorrhoids. A repeat colonoscopy was

3

recommended in 5 years.

g.    On April 17, 2013 Mr. Inmenso returned to Dr. Martinez at the Miami Beach Community Health Center complaining of constant throat discomfort-like coughing, some phlegm and neck pain.  He also complained of muscle tenderness in the left paraspinal musculature of his neck and upper back. Dr. Martinez noted that his weight was 187 pounds and he was instructed to lose weight.  Breath sounds were not evaluated. Dr. Martinez diagnosed muscle spasm of the neck and also noted that the thyroid function tests revealed nonspecific abnormal findings.  He prescribed Flexeril and warm compresses.

h.    On July 17, 2013 Mr. Inmenso again returned to Dr. Martinez complaining of a cough, continued throat discomfort, phlegm and constant throat clearing.  Breath sounds were not auscultated by Dr. Martinez.  The assessment included dry cough, hypertension, subclinical hypothyroidism and male erectile disorder.  His weight was noted to be 187lbs.  Dr. Martinez' plan for the cough was to discontinue/hold Captopril.

i.    Mr. Inmenso again presented to Dr. Martinez on September

4

11, 2013 complaining of persistent cough. Although he reported some improvement in the cough with the change in the blood pressure medication, the cough remained and he *still had phlegm in the morning. The physical examination* was noted to be within normal limits but breath sounds were not documented and there was no treatment plan for the cough.

j.     A CBC was drawn on November 19, 2013 and was within normal limits with the exception of a slightly decreased hemoglobin level of 12.5 (normal = 12.6-17.7) and liver function tests were within normal limits.

k.     Repeat lab studies were performed on January 28, 2014 and showed a low hemoglobin level of 11.1 (normal = 12.6-17.7) and a low hematocrit level of 34.9 (normal = 37.5-51). The albumin level was also low at 3.3 (normal = 3.6-4.8).

l.     At the office visit of January 31, 2014 Dr. Martinez noted that Mr. Inmenso "continues with a dry cough that is now chronic". The examination was noted to be within normal limits without documentation of breath sounds or oral examination. Dr. Martinez' assessments included dry cough, hypogonadism, anemia, and carcinoma of large intestine. His

5

weight was 180 pounds and again he was instructed to lose weight. Dr. Martinez did not recognize that Mr. Inmenso had lost 20 pounds over the past year or note if Mr. Inmenso had been following the diet plan or if the weight loss was due to the possibility of an underlying carcinoma. The treatment plan included CEA and chest x-ray.

m.   The lab studies were performed on March 4, 2014 at LabCorp and revealed an elevated WBC of 10.9 (normal = 4.0-10.5), a lower hemoglobin level of 10.6 (normal = 12.6-17.7) and a low hematocrit level of 34.7 (normal = 37.5-51) and the CEA was elevated to 44.3 (normal = 0.0-4.7).

n.   The chest x-ray was performed on March 5, 2014 and noted chronic changes in both lungs, abnormal density within the posterior left lower lung blunting the left posterior costophrenic angle which needed follow up with a CT of the chest for better characterization and to rule out any underlying mass.

o.   Mr. Inmenso returned to Dr. Martinez at Miami Beach Community Health Center on March 7, 2014 to review the lab and x-ray results. Dr. Martinez noted that Mr. Inmenso continued with the chronic cough as well as some discomfort

6

in his left shoulder area and back pain. Dr. Martinez also noted that his CEA was elevated to 44.3 from a previous normal level of 3.2 and the chest x-ray showed a left blurred costophrenic angle. A CT of the chest, abdomen, and pelvis was ordered. Mr. Inmenso was instructed to return in six weeks.

p.  On March 19, 2014 Mr. Inmenso presented to the emergency department of Jackson North Medical Center complaining of cough, shortness of breath, and chest pain. A CT scan of the chest revealed bilateral pulmonary embolus and a left lung mass. A CT scan of the abdomen and pelvis showed some lytic lesions in the right side of the sacrum and iliac bones and a soft tissue mass in the right iliac fossa.

q.  A CT guided biopsy of the right pelvic mass was performed on March 20, 2014 and showed moderately differentiated adenocarcinoma with severe acute inflammation.

r.  Mr. Inmenso underwent chemotherapy and radiation therapy at Jackson Memorial Hospital and expired on November 16, 2014.

7.  It is my opinion to a reasonable degree of medical probability that Ramon Martinez, M.D. and the medical and nursing staff at Miami Beach

Community Health Center deviated from the acceptable standards of care and departed from the prevailing professional standards of care in the following manners:

a.   Failed to coordinate all clinical data to arrive at a correct diagnosis and treatment plan.

b.   Failed to order necessary and appropriate testing.

c.   Failed to perform a detailed and thorough physical assessment.

d.   Failed to order a chest x-ray from September 24, 2012 through January 31, 2014.

e.   Failed to timely order a chest x-ray in light of the patient's continued complaints.

f.   Failed to timely order a CT of the chest in light of the patient's continued complaints.

g.   Failed to refer the patient to a specialist in light of the patient's continued complaints.

8.   It is my opinion, within a reasonable degree of medical probability, that the departures from the prevailing professional standard of care of Dr. Martinez and/or the medical and nursing staff of Miami Beach Community Health Center were a cause of the death of Luis Inmenso.

9.   More likely than not, the outcome would have been different with

proper care.

10.    I have never been found guilty of fraud or perjury in any jurisdiction.  Further, to the best of my knowledge, I had one opinion disqualified in the case styled *Stalner v. Cracker Barrel* in Federal Court in Cook County, Illinois, Case No. 01-C6848 (ND Ill.)

FURTHER AFFIANT SAYETH NAUGHT.


_C. David Bakken, M.D._
C. DAVID BAKKEN, M.D.


The foregoing Affidavit was acknowledged before me, an Officer duly authorized in the State and County of aforesaid, to take acknowledgments, this _14th_ day of May, 2016, by _C David Bakken_____, who is personally known to me.

has proved by IL DL# B250 1044 3135
to be himself.

"OFFICIAL SEAL"
MARY L. GERYOL
Notary Public, State of Illinois
My Commission Expires 05/24/17
County of Cook

_Mary L Geryol_
Notary Public
My commission expires:

9

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

U.S. Department of Health and Human Services
Office of the General Counsel
General Law Division
Claims and Employment Law Branch
330 C Street, SW
Attention: Claims
Switzer Building, Suite 2600
Washington, DC 20201

9590 9402 1481 5329 8734 78

2. Article Number *(Transfer from service label)*

EL426779624US

PS

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 1481 5329 8734 78

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

MALOVE
HENRATTY, P. A.

14 ROSE DRIVE
FORT LAUDERDALE, FL 33316